**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT CHATTANOOGA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 1:25-cr-29-CEA-CHS |
| v. | ) | |
| | ) | |
| ELMER HARRIS | ) | |

# REPORT AND RECOMMENDATION

## I. Introduction

This matter is before the Court on Defendant's Motion to Suppress [Doc. 96] which the District Court has referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B)-(C). This Court held a hearing on the motion on July 30, 2026. The parties submitted post-hearing supplemental briefing as requested by the Court. [Docs. 144, 150]. For the reasons stated herein, it is **RECOMMENDED** that the motion to suppress be **DENIED**.

By way of summary, Defendant Elmer Harris relies upon the Fourth Amendment's prohibition against unreasonable search and seizure. Defendant is charged with knowingly and intentionally distributing 400 grams or more of a mixture and substance containing a detectable amount of fentanyl, and 50 grams or more of methamphetamine. [Doc. 1 at 1–3]. Defendant moves to suppress the search of his person and vehicle which yielded the drugs because he believes the officer who stopped him did not have probable cause to conduct a traffic stop, search his person, search the car he was driving, and search the backpack inside of the car. [Doc. 97 at 5]. Additionally, Defendant argues the officer arrested Defendant outside of the officer's jurisdiction, rendering the subsequent search of Defendant and his vehicle invalid. [Doc. 144 at 11]. Although the police must generally obtain a search warrant before conducting a search, there are exceptions to this general rule which permit law enforcement to conduct a warrantless search. Here, the police

relied upon the search incident to arrest exception to search Defendant's person, and the automobile exception to search the car and its contents.

## II. Facts

On January 7, 2024, Officer Charles Linebarger of the Spring City Police Department conducted narcotics surveillance at Defendant's residence. While there, Officer Linebarger observed a Mazda SUV with a Florida license plate leave Defendant's house and travel on New Lake Road in Rhea County, Tennessee. Officer Linebarger conducted a traffic stop on Defendant's vehicle[1] because he believed the windows of the vehicle were too darkly tinted.

Defendant was the driver and sole occupant of the vehicle. Officer Linebarger approached Defendant's vehicle on foot and told Defendant the reason for the stop. Officer Linebarger then asked for Defendant's license and registration. Defendant gave Officer Linebarger his license, but said it was not his car, so he was not sure where the registration was located. Defendant called the owner of the car to locate the registration, and Officer Linebarger went back to his vehicle to run Defendant's information through a law enforcement database. While in his police vehicle, Officer Linebarger called dispatch and inquired whether Defendant was on probation. Dispatch responded that Defendant was on probation. Officer Linebarger returned to Defendant's vehicle and asked if he could search the vehicle. Defendant responded that he could not, because it was not Defendant's vehicle. Officer Linebarger also requested that Defendant step out of the vehicle. Defendant refused to do so. At that point, Officer Colby Yarger arrived on scene to assist Officer Linebarger. Still at the window of Defendant's vehicle, Officer Linebarger asked Defendant if he was on probation. Defendant first answered that he was not, and then he admitted that he was on

---

[1] At the time of the traffic stop, it is uncontroverted that Defendant was driving a vehicle that did not belong to him. In this order, the Court will, nevertheless, refer to the vehicle as "Defendant's vehicle" simply to indicate that it was the vehicle that he was driving and exercising control over at the time of the traffic stop. Such designation is not intended to suggest that Defendant owned the vehicle.

probation.

Following that exchange, Officer Linebarger returned to his own police vehicle and made another phone call to confirm that Defendant was on probation. The person on the phone provided such confirmation. Officer Linebarger then went back to Defendant's vehicle and told him to get out of the vehicle. Defendant refused to exit the vehicle, claiming it was not his vehicle. Officer Linebarger questioned Defendant again about his probationary status, and Defendant admitted that he was on state probation for a 2019 methamphetamine charge. Officer Linebarger explained to Defendant that he had to get out of the car because he had signed paperwork agreeing to submit to such requests from law enforcement as part of his probationary status. Defendant perseverated in refusing to get out of the car, and repeatedly asked Officer Linebarger, "What do you need to talk to me about?" Defendant then attempted to roll up his window, grabbed the steering wheel, and appeared to put the car in drive. Officer Linebarger reached into the car, at which point Defendant and Officer Linebarger wrestled for control over the steering wheel. Defendant had placed the car in drive at that point, and punched the accelerator. The car lurched forward with Officer Linebarger still leaning into the car as he fought for control of the steering wheel and resisted Defendant's efforts to drive away. Officer Yarger, who was stationed behind Defendant's vehicle, used his sidearm to fire a single shot into Defendant's right rear tire. Defendant again accelerated and lurched several feet into the roadway with Officer Linebarger still hanging on precariously. Finally, Defendant stopped the vehicle and agreed to get out of the vehicle.

Officer Linebarger placed Defendant under arrest, read him his *Miranda* rights, and searched his person. The search of Defendant yielded $146 along with a baggie of mixed blue and white tablets. Officer Linebarger then searched the vehicle, and found a methamphetamine pipe in the passenger seat. As the officers continued to search the car, they found a black backpack

which contained $38,910.00, approximately 405.2 grams of methamphetamine, and a methamphetamine pipe. Based on these events, law enforcement conducted a security sweep of Defendant's home, and found more than 400 grams of methamphetamine and more than 100 grams of fentanyl. On February 25, 2025, a federal grand jury indicted Defendant and others for conspiracy to distribute 400 grams or more of a mixture and substance containing a detectable amount of fentanyl and 50 grams or more of methamphetamine. Defendant moved to suppress the search on April 20, 2026.

## III. Legal Standard

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. Thus, law enforcement officers are generally required to obtain a warrant before conducting a search. In the context of automobiles, stopping an automobile constitutes a 'seizure' of 'persons' within the meaning of this provision, and "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 809-10 (citations omitted). Thus, a seizure is constitutional if the officer has "either probable cause of a civil infraction or reasonable suspicion of criminal activity." *United States v. Lyons*, 687 F.3d 754, 763 (6th Cir. 2012) (citation omitted). This is the case regardless of "the actual motivations of the individual officers involved." *Whren*, 517 U.S. at 813.

Defendant, as the party moving to suppress, bears the burden of establishing that his Fourth Amendment rights were violated by a challenged search or seizure. *See Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978) (citations omitted). It is the Government's burden, however, to demonstrate by a preponderance of the evidence that a particular search or seizure is constitutional and not violative of Defendant's Fourth Amendment rights. *See United States v. Baldwin*, 114 F. App'x

675, 681 (6th Cir. 2004) (citing *United States v. Winfrey*, 915 F.2d 212, 216 (6th Cir. 1990)).

If a search or seizure does not comply with the Fourth Amendment, then all evidence obtained from the search or seizure must be suppressed. *See United States v. Gross*, 550 F.3d 578, 583 (6th Cir. 2008) ("[E]vidence and statements obtained from [an] illegality must be excluded as 'fruit of the poisonous tree.'").

## IV. Analysis

Defendant moves to suppress all evidence obtained during the January 7, 2024 stop and search of his person and the car he was driving. Defendant says the stop, arrest, and search of him and the car were unlawful. [*See* Docs. 97, 144]. He argues that, based on the facts: (1) the arresting officer, Officer Linebarger, was pursuing Defendant outside of the officer's jurisdiction and could not search Defendant; (2) a window-tint violation does not permit a subsequent search of the person or the vehicle; and (3) none of the searches the officers made—of Defendant's person, vehicle, and backpack—were accompanied by a search warrant. He concludes that the searches were unlawful because there was no probable cause to justify the stop, detention, arrest, and search.

The Government relies on the window-tint violation, Defendant's suspicious actions and movements within the vehicle, Defendant's probationary status, Defendant's defiance of law enforcement, and Defendant's attempt to speed away in the vehicle to justify the stop and subsequent arrest and search of Defendant. [*See* Docs. 102, 150]. The Government states that the officer lawfully searched Defendant's person under the search incident to lawful arrest exception to the warrant requirement. Because that search yielded drugs, the Government argues that the officer had probable cause to believe that contraband or other evidence of criminal activity would be found in Defendant's car. Moreover, Defendant's probationary status required him to allow law enforcement to conduct searches of his person and areas within his control, and he had already

waived his Fourth Amendment right to refuse such a search.

### A. Probable Cause to Stop and Search

#### 1. The Initial Stop of Defendant

In Defendant's pre-hearing brief, he concedes that Officer Linebarger had probable cause to stop the vehicle he was driving because Officer Linebarger "stated that he observed a white SUV's windows and determined the window tint was too dark in violation of Tenn. Code Ann. § 55-9-107." [*See* Doc. 97 at 7]. However, in his post-hearing brief, Defendant took a different stance. Specifically, Defendant states that he "does not concede Linebarger had reasonable suspicion to stop the vehicle he was driving," because the vehicle was registered in Florida, and Florida allows darker window tints than Tennessee allows. [*See* Doc. 144 at 3]. While the Court does not generally accept arguments that were not included in the initial briefing or raised at the suppression hearing, Defendant's counsel was apparently unaware that the car driven by Defendant had Florida plates until the hearing. Consequently, the Court will address this late-raised argument on the merits.

For background, Officer Linebarger conducted a traffic stop on Defendant's vehicle based on suspicion that Defendant's windows were too darkly tinted. Officer Linebarger confirmed after the traffic stop that Defendant's window tint was too dark, at 27% visible light transmission. [Doc. 97 at 7–8]. Tennessee's window-tint law does not allow for visible light transmission of less than 35%. *See* Tenn. Code Ann. § 55-9-107(a)(1). Defendant notes that Florida's window-tint law allows 28% visible light transmission for front side windows, 15% for rear side windows and rear windows of sedans, and only 6% visible light transmission for rear side windows and rear windows of trucks, vans, and SUVs. *See* Fla. Stat. § 316.2953.

Defendant argues that Officer Linebarger was not justified in his stop of Defendant because Tennessee's window-tint statute creates an exception for out-of-state vehicles. [*See* Doc. 97 at 7–8]. Specifically, that section of the statute states that the restrictions on visible light transmission do not apply to "[a]ny motor vehicle that is registered in another state and meets the requirements of the state of registration." Tenn. Code Ann. § 55-9-107(a)(6)(A)(iii). Thus, Defendant argues that the windows of the vehicle were in compliance with Florida law, when taking a 2-3% margin of error into consideration, and therefore Officer Linebarger was not justified in his stop of Defendant. [Doc. 144 at 4].

However, the Tennessee window-tint statute also states that the "front door windows of any motor vehicle" are not "exempt" from the specification that the windows do not have a visible light transmittance of less than 35%. Tenn. Code Ann. § 55-9-107(a)(6)(B) ("This subdivision (a)(6) shall not be construed in any way to exempt the front door windows of any motor vehicle of any kind from the specifications of subdivision (a)(1)(A).").

Since Defendant's windows were at 27% visible light transmission, the window tint violated both Tennessee and Florida laws. Further, Defendant does not cite to, nor is the Court aware of, any precedent that states that drivers are afforded a 2-3% margin of error when police are citing them for window-tint violations.

Regardless of the exact measurement of the window tint, Officer Linebarger suspected that the windows were too dark, either under Tennessee or Florida law. Officer Linebarger testified that he has made several stops in the past for window tint violations. He added that, as a police officer with thirteen years' experience, he was able to discern that Defendant's windows appeared to be too dark; however, in order to confirm that they were actually too dark, Officer Linebarger needed to conduct a traffic stop and test the windows with a window tint device.

The Court is persuaded that Officer Linebarger had a reasonable belief that Defendant's windows exceeded the tint limit. An officer can stop a car for a window tint violation when the officer is familiar with the state's window tint law and "estimate[s] that the vehicle [is] substantially darker than permitted by law." *United States v. Shank*, 543 F.3d 309, 313 (6th Cir. 2008). Here, Officer Linebarger testified that he had stopped several cars in the past due to window tint violations. And, after the encounter, the officers used a tint meter on the windows, which showed that the tint of the windows was about eight percentage points below the Tennessee legal limit, and one percentage point below the Florida limit.

Based on the Court's assessment of Officer Linebarger's testimony and the body-worn camera footage, the Court finds that Officer Linebarger had a reasonable basis to believe that Defendant's windows were darker than the law permits, thus allowing him to conduct the traffic stop.

**2. The Search of Defendant's Person**

Defendant argues that the search of his person by Officer Linebarger was done without a search warrant and without probable cause. [Doc. 97 at 12]. Specifically, Defendant argues that Officer Linebarger only had probable cause that Defendant's vehicle had darkly tinted windows in violation of the Tennessee window-tint statute, which does not give an officer permission to search Defendant and the vehicle. [*Id.*]

For context, the Court will describe what the police body-camera footage depicted during the hearing. First, Defendant was pulled over by Officer Linebarger, and Officer Linebarger approached Defendant and told him his windows looked a little dark. [Officer Linebarger's Body Cam. at 0:56]. Defendant then gave his license to Officer Linebarger. [*Id.* at 01:11]. Officer Linebarger went back to his patrol vehicle and called dispatch to inquire about whether Defendant

was on probation. [*Id.* at 05:40]. Dispatch told Officer Linebarger that Defendant was indeed on probation. [*Id.* at 05:41]. Officer Linebarger went back to Defendant's vehicle, and asked if he could search the car. [*Id.* at 06:00]. Defendant refused, claiming it was not his car. [*Id.* at 06:05]. Officer Linebarger asked Defendant to step out of the car and to submit to a pat-down. [*Id.* at 06:07]. Defendant refused to do that as well. [*Id.* at 06:10]. Officer Linebarger asked Defendant if he was on probation, to which he first answered that he was not on probation, but then he confirmed he was on probation. [*Id.* at 06:03]. Defendant continued to refuse to get out of the car. [*Id.* at 06:15]. Officer Linebarger then walked away from the vehicle to make another phone call. [*Id.* at 06:50–08:00]. Officer Linebarger confirmed again that Defendant was on probation through the phone call. [*Id.* at 07:19]. Officer Linebarger went back to Defendant's vehicle and again asked Defendant to get out of the car. [*Id.* at 08:15]. Defendant refused to get out of the vehicle, again claiming that it was not his car. [*Id.* at 08:48–08:53]. Officer Linebarger stated "if you do not want me in the vehicle, that's all fine and dandy, but you can still get out whenever I ask you to. Okay? That's how it works." [*Id.* at 08:53–08:59]. Defendant again refused to get out of the vehicle. Defendant then repeatedly asked "what do you need to talk to me about?" [*Id.* at 09:00–09:49]. Then, Defendant started to roll his window up, grabbed the steering wheel, and appeared to put the car in drive. [*Id.* at 09:51]. Officer Linebarger also grabbed the steering wheel after Defendant did, and Defendant and Officer Linebarger wrestled over the steering wheel. [*Id.* at 09:51–9:58]. Defendant then drove for a few feet until Officer Yarger shot the back right tire of Defendant's vehicle. [*Id.* at 09:58]. Defendant drove a few more feet and finally agreed to get out of the car. [*Id.* at 10:01–10:54]. Officer Linebarger then placed Defendant under arrest and searched Defendant's person, finding cash and drugs. [*Id.* at 15:50].

Officer Linebarger's request that Defendant exit his vehicle set into motion the chain of events that led to the search of Defendant's person and vehicle. Consequently, the Court will focus on whether it was reasonable for Officer Linebarger to ask Defendant to get out of the vehicle. "The touchstone of our analysis under the Fourth Amendment is always the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security." *Pennsylvania v. Mimms*, 434 U.S. 106, 108–09 (1977) (quoting *Terry v. Ohio,* 392 U.S. 1, 19 (1968)) (internal quotation marks omitted). In *Mimms*, the Supreme Court found that asking a driver to get out of the car, even for something as minor as a traffic violation, was a *de minimis* intrusion on the driver's personal liberty. *Id.* at 111 (noting that the driver was initially pulled over for an expired license plate). Additionally, the Court stated that asking a driver to get out of a vehicle can prevent injury to the officer from oncoming traffic or from the chance that the driver has a weapon that the officer cannot see. *Id.* In short, "[w]hat is at most a mere inconvenience [to the driver] cannot prevail when balanced against legitimate concerns for the officer's safety." *Id.*

Here, Defendant was pulled over for a window-tint violation, which is a legitimate traffic violation. Then, Officer Linebarger asked Defendant multiple times to get out of the car, and Defendant refused. Before the altercation with Defendant, Officer Linebarger had been surveilling Defendant's home and had suspected him of engaging in drug activity. Finally, Officer Linebarger knew that Defendant was on probation for a methamphetamine charge from 2019. The Court finds that Officer Linebarger was justified in requesting Defendant to get out of the car. Defendant's subsequent actions—particularly that he grabbed the steering wheel, put the car in drive, and accelerated two times while Officer Linebarger was hanging onto the steering wheel and ordering him to stop—gave the officers probable cause to search him. Additionally, the fact that Officer Linebarger suspected Defendant of drug activity; Defendant was driving a vehicle with overly

tinted windows; Defendant admitted that he was on probation for a drug conviction; and Defendant attempted to flee in the vehicle, collectively gave Officer Linebarger probable cause to arrest and search his person. *See United States v. Williams*, 475 F. App'x 36, 39 (6th Cir. 2012) ("We have held that if officers have reasonable suspicion that an individual has committed or is committing a crime, and when approached by officers the individual flees or attempts to flee, the reasonable suspicion ripens into probable cause.") (internal quotation marks omitted).

Officer Linebarger was also justified in searching Defendant's person under the search incident to lawful arrest exception to the warrant requirement. When a person attempts to flee the police when pulled over for a traffic stop, an arrest is justified. *See United States v. Robinson*, 78 F. App'x 501, 505 (6th Cir. 2003) (holding that "the arrest was legal based on Defendant's attempt to flee"). Since the arrest was justified, the search of his person was also justified. *See Chimel v. California*, 395 U.S. 752, 762–63 (1969) ("When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape."). Thus, the Court finds that the arrest and subsequent search of Defendant's person was valid under the Fourth Amendment.

**3. The Search of Defendant's Vehicle and Backpack**

Defendant states that the search of the vehicle and backpack in the vehicle violated the Fourth Amendment because: (1) Defendant was in custody and the vehicle was inoperable; and (2) the tinted windows limited visibility such that Officer Linebarger was unable to see if there was contraband in the car. [Doc. 144 at 6–7]. These arguments by Defendant ignore the fact that Officer Linebarger found drugs and cash on Defendant's person as a result of searching Defendant after he was arrested. That alone gave Officer Linebarger permission to search the vehicle Defendant was driving. Under the automobile exception to the warrant requirement, police can

"search a car without a warrant if they have probable cause to believe that it contains evidence of a crime." *United States v. Thibou*, No. 24-1991, 2026 WL 126431, at *5 (6th Cir. Jan. 16, 2026). Finding drugs on Defendant's person gave Officer Linebarger probable cause to believe that the car contained evidence of a crime. Thus, the search of the car by Officer Linebarger was valid under the Fourth Amendment.

With regard to the backpack, the Supreme Court has held that an officer who has probable cause to search a car can search every part of "the vehicle and its contents that may conceal the object of the search." *California v. Acevedo*, 500 U.S. 565, 570 (1991) (citation omitted). Because drugs could have been found in any compartment or container in the car, Officer Linebarger had probable cause to search every part of the car and its contents. Thus, Officer Linebarger was justified in his search of the backpack, and the search did not violate Defendant's Fourth Amendment rights.

**B. Jurisdictional Authority of Officer Linebarger**

Having found probable cause for the traffic stop, the Court will next address the jurisdictional validity of Defendant's stop and arrest by Officer Linebarger. Defendant claims that Officer Linebarger did not have jurisdictional authority to stop or search Defendant because these events occurred outside the city limits of Spring City. [*See* Doc. 97 at 15]. The Court notes, however, that there is a Tennessee statute which provides:

> The police authority of all incorporated towns and cities shall extend to a distance of one (1) mile from the lawful corporate limits thereof, for the suppression of all disorderly acts and practices forbidden by the general laws of the state; provided, that such jurisdiction of an incorporated town or city shall not be hereby extended beyond the limits of the county in which any part of such town is situated, or so as to come within one (1) mile of any other incorporated town or city.

Tenn. Code Ann. § 6-54-301 (West).

Here, Officer Linebarger testified that he activated his blue lights to initiate the stop while he was still within the Spring City limits, and that Defendant did not stop driving until he was outside the city limits by a short distance. [*See* Doc. 150 at 3]. Additionally, the Government stated in its first responsive brief that Officer Linebarger stopped Defendant on "New Lake Road at Reed Strickland Lane," which is approximately two minutes from Defendant's address of 172 Lakeview Drive, Spring City, TN—the residence which Officer Linebarger had been surveilling for drug activity. [*See* Doc. 102 at 2]. The location at which the traffic stop and arrest occurred, i.e., the intersection of New Lake Road and Reed Strickland Lane, is only .1 mile outside of the Spring City limits. Consequently, the events at issue occurred well within the one-mile jurisdictional cushion provided by Tennessee law. So, contrary to Defendant's assertion, Officer Linebarger did have jurisdictional authority to stop Defendant and, ultimately, to make the arrest.

**C. Probationary Status**

Even assuming *arguendo,* that the officers did not have probable cause to search Defendant's person and the car, Defendant was on probation from a state methamphetamine charge. [*See* Doc. 102 at 2]. Consequently, Defendant was subject to the conditions of his probation at all times, which included a condition that he consent to searches by law enforcement. Specifically, Defendant's probation paperwork stated: "I agree to a search, without a warrant, of my person, vehicle, property, including any internet-capable devices, and place of residence by any Probation Parole Officer or law enforcement officer, at any time." [*See* Doc. 130-2 at 5].

Defendant does not contest that he was on probation on January 7, 2024, from a 2019 state methamphetamine charge, and that it would be permissible for any law enforcement officer to search him at any time. [Doc. 97 at 16]. Rather, Defendant again argues that because Officer Linebarger was acting outside of his jurisdiction, as a "private citizen," Officer Linebarger would

not have access to the Criminal Justice Portal that shows a person's criminal history. [Doc. 144 at 9–10]. Further, according to Defendant, Officer Linebarger would not be allowed to search Defendant's person or car as a private citizen, because the probation conditions state that any Probation Parole Officer or law enforcement officer can search Defendant, not any citizen. [*Id.*]

The Court, however, rejects these arguments because Officer Linebarger was well within the one-mile jurisdictional limit of his authority as a Spring City police officer when he conducted the traffic stop. Consequently, he did have jurisdictional authority as a law enforcement officer—not as a private citizen—to make the traffic stop, to access the Criminal Justice Portal for the purpose of obtaining a suspect's criminal history, and to conduct a search of a suspect and his vehicle based upon a probation condition to which that person was subject.

**D. Inventory Search and Inevitable Discovery**

The Government argues in its post-hearing briefing that, had the officers not searched Defendant's vehicle on the scene, it would have been inventoried pursuant to Spring City police procedures. [Doc. 150 at 2–3]. Thus, the vehicle's contents, like the drugs and cash, would have been inevitably discovered. [*Id.* at 3].

"[I]nventory searches are a well-defined exception to the warrant requirement of the Fourth Amendment." *Colorado v. Bertine*, 479 U.S. 367, 371 (1987). "An inventory search is the search of property lawfully seized and detained, . . . to ensure that it is harmless, to secure valuable items (such as might be kept in a towed car), and to protect against false claims of loss or damage." *Whren*, 517 U.S. at 811 n. 1. An inventory search may only be conducted if police have taken custody of an item lawfully. *See United States v. Smith*, 510 F.3d 641, 650–51 (6th Cir. 2007) (internal quotation marks omitted).

"[T]he inevitable discovery doctrine allows for the admission of evidence that would have been discovered even without the unconstitutional source." *United States v. Cooper*, 24 F.4th 1086, 1091 (6th Cir. 2022). The purpose of this doctrine comes from the deterrence goals of the exclusionary rule: if evidence had been discovered despite the illegal actions of law enforcement, then "the deterrence rationale has so little basis that the evidence should be received." *Nix v. Williams*, 467 U.S. 431, 444 (1984). This exception allows law enforcement to be in the same position they would have been in absent the illegal conduct. *Cooper*, 24 F.4th at 1091. There are two scenarios in which inevitable discovery operates: first, when there is an independent investigation that would have discovered the same evidence, and second, when there are other compelling facts that show that discovery was inevitable. *United States v. Kennedy*, 61 F.3d 494, 499 (6th Cir. 1995).

Here, after the arrest of Defendant, the officers had the car towed which, in turn, made it subject to an inventory search pursuant to Spring City police procedures. [Doc. 150 at 3]. Thus, anything in the car, including the backpack, would have been searched by the officers at the police station. The car being towed and inventoried pursuant to Spring City's police procedures certainly constitutes "other compelling facts" which show that discovery of the drugs and cash in the vehicle was inevitable.

Thus, even if the officers had not searched the car on the scene, the car still would have towed and inventoried before being impounded in the wake of Defendant's arrest. Accordingly, Defendant's arrest, combined with Spring City's inventory procedures when an arrested person's car is impounded, are compelling facts that shows that discovery of the drugs and cash in the vehicle was inevitable.

## V. Conclusion

For the foregoing reasons, the undersigned **RECOMMENDS**[2] that Defendant's Motion to Suppress [Doc. 96] be **DENIED**.

**ENTER.**

/s/ *Christopher H. Steger*
UNITED STATES MAGISTRATE JUDGE

[2] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b). Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 149 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370 (6th Cir. 1987).